United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPHINE EASTON,
Plaintiff,
v.
WELLS FARGO & COMPANY, et al.,
Defendants.

Case No. 20-cv-02193-HSG

**ORDER GRANTING MOTION TO CHANGE VENUE**

Pending before the Court is Defendants Wells Fargo & Company ("WFC") and Wells Fargo Bank, N.A.'s ("WFB," and together with WFC, "Defendants") motion to transfer venue to the Central District of California. Dkt. No. 15 ("Mot."). On May 14, 2020, Plaintiff Josephine Easton ("Plaintiff") filed an opposition. Dkt. No. 17 ("Opp."). Defendants replied on May 21, 2020. Dkt. No. 18 ("Reply"). After carefully considering the parties' arguments, the Court **GRANTS** Defendants' motion to transfer venue to the Central District of California. [1]

## I. BACKGROUND

Plaintiff is a resident of Riverside, California. Dkt. No. 1 ("Compl.") ¶ 5. Plaintiff alleges that she was employed "by Defendant"—Plaintiff does not specify which Defendant—in various positions as a non-exempt "Loan Adjuster" at locations in San Bernardino County from June 2013 to November 2019. *Id.* ¶¶ 5, 11. Plaintiff does not allege that she worked for either of the Defendants within the Northern District of California or lived in this District while employed by the Defendants. The allegations in the complaint that relate to the Northern District of California are that the Defendants "own and operate banks and support centers throughout the United States

[1] The Court finds this matter appropriate for disposition without oral argument, and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

United States District Court
Northern District of California

and California, including in San Francisco." *Id.* ¶ 6; *id.* ¶ 10 ("Defendants operate and . . . [do] business in San Francisco County and throughout California") *id.* ¶ 7 ("Defendants were a corporation registered to do business in California … with its principal place of business" in San Francisco); *id.* ¶ 10 (one of the Defendants has "headquarters" in San Francisco and "employs numerous Class Members in San Francisco County").

However, Defendants are separate entities that are headquartered in, and operate from, different locations. *See* Declaration of Cathy Tautkus (Dkt. No. 15-1, "Tautkus Decl.") ¶¶ 4-5.[2] Plaintiff was employed by Defendant WFB, a national banking association chartered and with its principal place of business in South Dakota. *Id.* ¶¶ 5-6. Of WFB's employees in California who appear to have held positions similar to those described by the factual allegations in Plaintiff's complaint since March 31, 2017, Defendants contend that approximately 75% worked at locations within the Central District of California. *Id.* ¶ 6. WFC, on the other hand, is incorporated in Delaware and headquartered in San Francisco. *Id.* ¶ 4. WFC is the parent of WFB, but according to Defendants is a holding company that is not involved in WFB's day-to-day business and would not have been involved in the creation, execution, or supervision of the employment policies and practices at issue in this dispute. *Id.* ¶ 4.

Plaintiff asserts ten causes of action on behalf of herself and similarly situated non-exempt loan adjusters employed or formerly employed by the Defendants in California as follows: failure to pay employees for all hours worked under the FLSA; failure to pay regular and minimum wages; failure to pay overtime compensation; failure to provide meal periods; failure to provide rest periods; failure to timely pay wages due at termination; failure to furnish accurate, itemized wage statements; failure to pay wages due and payable twice monthly; failure to reimburse

[2] Plaintiff objects to portions of this declaration on a number of evidentiary grounds. *See* Dkt. No. 17-3. The Court overrules these objections, as the declaration establishes an adequate foundation for the testimony about Defendants' organizational structure, policies, and practices, and Ms. Tautkus' statements are clearly based on her personal knowledge, including as an "Employee Relations Senior Consultant." *See* Tautkus Decl. ¶ 2 ("As an Employee Relations Senior Consultant, I have access to knowledge of the employment records and other information WFB retains regarding its current and former employees. I am also familiar with the WFB's general business operations and have knowledge of the management and operating structure of WFB, as well as knowledge of the business relationship between WFB and Defendant Wells Fargo & Company [].").

employees for required expenses; and unfair competition. Compl. ¶¶ 44-111.[3] Plaintiff seeks to represent a class composed of "All persons who are employed or have been employed by Defendants in the State of California, during the period of four years prior to the filing of this action through resolution of this action, who have worked as non-exempt loan adjusters." *Id.* ¶ 31.

## II. LEGAL STANDARD

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The purpose of this statute is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). The moving party bears the burden of showing that the transferee district is a "more appropriate forum." *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). The district court has broad discretion in deciding whether to transfer a case. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

The Court's transfer inquiry proceeds in two steps. First, the Court determines "whether the transferee district was one in which the action might have been brought by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) (internal quotation marks omitted). If so, the Court conducts an "individualized" case-specific analysis of convenience and fairness. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, (1988) (internal quotation marks omitted). In this district, courts typically consider the following factors: (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum. *See, e.g., Ironworks Patents LLC v. Samsung Elecs. Co.*, No. 17-cv-01958-HSG, 2017 WL 3007066, at *2 (N.D. Cal. July 14, 2017); *Perez v. Performance Food Grp., Inc.*, No. 15-cv-02390-HSG, 2017 WL 66874, at *2 (N.D. Cal. Jan. 6, 2017); *Brown v. Abercrombie &*

---

[3] After Plaintiff filed its opposition, Plaintiff submitted an amended complaint on June 5, 2020, adding violations of the Private Attorney General Act. *See* Dkt. No. 21 ("FAC").

*Fitch Co.*, No. 4:13-cv-05205 YGR, 2014 WL 715082, at *2 (N.D. Cal. Feb. 14, 2014).[4] "This list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Martin v. Glob. Tel*Link Corp.*, No. 15-cv-00449-YGR, 2015 WL 2124379, at *2 (N.D. Cal. May 6, 2015).

## III. DISCUSSION

Plaintiff does not dispute that this action could have brought in the Central District of California. *See* Opp. at 6. The Court therefore turns directly to the case-specific analysis of convenience and fairness.

### A. Non-Resident Putative Class Plaintiff's Choice of Forum Is Not Entitled to Deference

Although Plaintiff's choice of forum is generally entitled to some deference, "the degree of deference is substantially diminished in several circumstances." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1094 (N.D. Cal. 2013). These include where: (1) the named plaintiff "represents a class," (2) "the plaintiff resides outside of the chosen forum," and (3) "the conduct giving rise to the claims occurred in a different forum." *Perez*, 2017 WL 66874, at *3 (internal quotation marks and citations omitted); *Park*, 964 F. Supp. 2d at 1094 (same); *Brown*, 2014 WL 715082, at *3 (same).

Here, Plaintiff purports to bring this action on behalf of a statewide class, Compl. ¶¶ 1-4, 31-32, 35-43; Plaintiff is a resident of Riverside, which is located in the Central District, *id*. ¶ 5; and Plaintiff's relevant employment occurred entirely within San Bernardino County, which is also located in the Central District, *id*. ¶¶ 5, 11. Plaintiff's chosen venue is entitled to little—if any—weight in this putative class action. *See Perez*, 2017 WL 66874, at *3 (plaintiff's chosen venue in putative employment class action was "entitled little deference" because plaintiff "brought a class action, does not reside in the Northern District, and did not suffer any of the alleged violations here").[5]

---

[4] These factors are also "[c]onsistent" with Ninth Circuit precedent. *See Wilson v. Walgreen Co.*, No. C-11-2930 EMC, 2011 WL 4345079, at *2 (N.D. Cal. Sept. 14, 2011); *see also Jones*, 211 F.3d at 498–99 (listing examples of factors that courts may consider).

[5] Plaintiff contends that *Park* "states that courts normally give substantial deference to a plaintiff's choice of forum *unless four circumstances occur*." Opp. at 4-5 (emphasis added). *Park* says no



United States District Court
Northern District of California

United States District Court
Northern District of California

**B. Convenience of the Parties and Witnesses**

Plaintiff's convenience is entitled to lesser weight here because she chose to sue in a forum where she does not reside. *Id.*; *Brown*, 2014 WL 715082, at *4; *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *9 (N.D. Cal. Dec. 9, 2014). Indeed, because Plaintiff resides in the Central District, Compl. ¶ 5, a transfer there would logically be more convenient. And litigating in the Central District would be at least equally convenient for the Defendants, which do business in both Districts. *Id.* ¶¶ 6-7. In fact, Plaintiff does not dispute that litigating this case in the Central District would be more convenient for her, and at least equally convenient for Defendants. *See* Opp. at 7.

Instead, Plaintiff identifies two reasons why litigating in the Northern District would be only minimally inconvenient for the Defendants. Plaintiff's first argument is that the Northern District would be minimally inconvenient because "Defendants are headquartered in San Francisco." *Id.* This does not appear to be accurate. Plaintiff's employer was WFB, which is chartered and has its principal place of business in South Dakota, and its various divisions are headquartered and operate from locations throughout the United States. Mot. at 3-4; Tautkus Decl. ¶¶ 5-6.

Second, as support for its contention that "Defendants" are headquartered in San Francisco, Plaintiff references previous litigation in the District of Nevada from a decade ago in *Salazar v. Wells Fargo*, Case No. 2:09-cv-01829. Opp. at 2. Plaintiff contends that the *Salazar* Court found that Defendants are headquartered in San Francisco because witnesses with relevant knowledge of Electronically Stored Information ("ESI") were located in the Northern District, or worked there frequently. *Id.* According to Plaintiff, one of the key contested issues in discovery in this case will involve production of class contact information and "activity data." *Id.*

In *Salazar*, the plaintiff took the depositions of two 30(b)(6) witnesses who were both working in San Francisco. One of the two witnesses (Jeffrey Parker) was deposed in Phoenix, Arizona, not the Northern District. *See* Declaration of Richard E. Quintilone II (Dkt. No. 17-1,

---

such thing. Rather, *Park* articulates a disjunctive, non-exhaustive list of circumstances where "the degree of deference [to a plaintiff's chosen forum] is substantially diminished." 964 F. Supp. 2d at 1094.

"Quintilone Decl."), ¶¶ 3-4, Ex. A. The other witness, Rost Gofman, who was deposed in East Palo Alto, was designated to testify about a program called "Prospector," *id.* ¶ 5, Ex. B, which Plaintiff does not allege that she used. *See* Declaration of Josephine Easton ("Easton Decl.," Dkt. No. 17-2) ¶ 4 (listing seven programs Plaintiff used). The Court finds that the location of these depositions (from a decade-old case in the District of Nevada) regarding a software program that Plaintiff does not contend she used does has zero bearing on where witnesses relevant to the claims in this action are located.[6]

The parties also dispute where the punitive class members would reside. Plaintiff contends that they reside or work in the Northern District, while Defendants introduce evidence that approximately 75% worked at locations within the Central District. *See* Tautkus Decl. ¶ 6. "The convenience of non-party witnesses is often considered the most important factor for a motion to transfer." *Perez*, 2017 WL 66874, at *4; *Arreola*, 2014 WL 6982571, at *10; *Brown*, 2014 WL 715082, at *4. Courts also consider the related issue of "the availability of compulsory process to compel attendance of unwilling non-party witnesses." *Perez*, 2017 WL 66874, at *4 (quoting *Jones*, 211 F.3d at 498-99); *Arreola*, 2014 WL 6982571, at *10. Plaintiff's relevant employment occurred entirely within the Central District. Compl. ¶¶ 5, 11. This means that "any non-party witnesses—such as [her] former coworkers or managers—are most likely to reside in the Central District, and therefore, most likely would find it more convenient to testify there." *Perez*, 2017 WL 66874, at *4; *Arreola*, 2014 WL 6982571, at *10. Such witnesses are also "very likely [to] be beyond this Court's subpoena power." *Perez*, 2017 WL 66874, at *4; *Arreola*, 2014 WL 6982571, at *10; *Wilson*, 2011 WL 4345079, at *4; Fed. R. Civ. P. 45(c) (limiting subpoena power under most circumstances to "within 100 miles of where the person resides, is employed, or regularly transacts business in person"). And courts in this District have found that the location of "unidentified, hypothetical" putative class witnesses "bears little weight" in the analysis of this

[6] Plaintiff also asserts that "the experts are expected to reside" in the Northern District. Opp. at 5. The supporting citation makes clear that Plaintiff is referring to the *Salazar* 30(b)(6) witnesses as "experts," rather than referencing actual expert witnesses. Regardless, "[t]he convenience of expert witnesses … is given little weight." *Shore to Shore Props., LLC v. Allied World Assur.*, No. C 11-01512 JSW, 2011 WL 4344177, at *3 (Sept. 15, 2011) (alterations in original) (quoting *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001)).

United States District Court
Northern District of California

factor. *Brown*, 2014 WL 715082, at *4; *Wilson*, 2011 WL 4345079, at *4 (declining to consider the location of putative class members in the convenience of witnesses analysis where there was no indication that class members other than the named plaintiffs "would be needed to testify as witnesses or would want to actively participate in the litigation"). Accordingly, the Court finds that these factors weigh in favor of transfer.

**C. Ease of Access to Sources of Proof and Relative Costs of Litigation**

Courts have made clear that "[l]itigation should proceed where the case finds its center of gravity," *Panera*, 2008 WL 2811827, at *5, which can substantially reduce litigation costs. The center of this case is undeniably the Central District of California, where all the events underlying Plaintiff's claims occurred and where party and nonparty witnesses are likely to be located, as well as where counsel are located.

In short, "the cost of litigation would likely be lower in the Central District than in the Northern District, as counsel and at least some of the key witnesses"—if not most witnesses—"would not need to travel to the Northern District for proceedings. Thus this factor weights in favor of transfer." *Perez*, 2017 WL 66874, at *5 (internal quotation marks and citation omitted) (differences in costs of litigation in two forums favored transfer where named plaintiff in putative statewide employment class action worked exclusively for defendant in Central District of California and counsel was also located there); *Arreola*, 2014 WL 6982571, at *10 (same); *Ambriz v. Matheson Tri-Gas*, No. C 14-1041 CW, 2014 WL 2753886, at *3 (N.D. Cal. June 9, 2014) ("Plaintiffs all reside and work in the Central District. Their counsel is also located in the Central District. Litigating in the Central District would likely be more cost effective for both parties."); *Park*, 964 F. Supp. 2d at 1095 ("[S]ince Plaintiff, Plaintiff's counsel, and Defendant's counsel reside in the Central District, it will be cheaper and more efficient for [the] parties to litigate there.").[7] Accordingly, the Court finds that this factor favors transfer.

[7] The "feasibility of consolidation with other claims" is not a relevant factor here because no pending actions in the Northern District could be consolidated with this case. *See* Dkt. No. 1-1, Civil Cover Sheet (identifying no related case(s)).

**D. Local Interest in the Action**

Defendants contend that the Central District has a stronger local interest in this action because Plaintiff's relevant employment occurred exclusively within that District, Compl. ¶¶ 5, 11, "such that the alleged employment law violations must have occurred there," *Perez*, 2017 WL 66874, at *4. The Court agrees. At this stage of the litigation, the district where the named plaintiff worked has the greatest local interest.[8] *See Perez*, 2017 WL 66874, at *4 ("[T]he Court finds that this factor favors transfer because the Central District would have a modestly stronger interest in the class action, if certified, and more importantly, the Central District clearly has a stronger interest in Plaintiff's individual claims."); *Arreola*, 2014 WL 6982571, at *11 (finding this factor favored transfer even though "the Northern and Central Districts would have an equal interest in a certified class's case" because "the Central District has a greater interest in [Plaintiff's] individual claim"); *Brown*, 2014 WL 715082, at *6 (finding this factor favored transfer even though defendant operated stores in both the Northern and Central Districts because "the majority of events occurred in the Central District").[9]

**E. Balancing of Discretionary Factors**

Plaintiff's choice of forum, as always, weighs against transfer, but is entitled to little deference because this case was brought as a class action, Plaintiff does not reside in the Northern District, and she did not suffer any of the alleged violations here. In contrast, the convenience of the witnesses (often considered the most important factor) weighs for transfer, as do two other factors—the local interest in the controversy and the cost of litigation. The remaining factors are neutral. Accordingly, transfer is appropriate.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's motion to transfer venue. The

---

[8] Indeed, the preliminary stage of these proceedings is yet another factor that independently weighs in favor of transfer. *See, e.g.*, *Unisys Corp. v. Access Co.*, No. C05-3378 TEH, 2005 WL 3157457, at *6 (N.D. Cal. Nov. 23, 2005) ("The fact that litigation has scarcely begun weighs in favor of transferring the action.").

[9] Here, both forums are federal district courts located in California, and are equally familiar with the applicable California and federal law. *Perez*, 2017 WL 66874, at *4 (claims under FLSA, California Labor Code and Unfair Competition Law); *Ambriz*, 2014 WL 2753886, at *1 (same for claims under California Labor Code and Unfair Competition Law). Accordingly, that factor is neutral.

United States District Court
Northern District of California

Case Management Conference previously scheduled for July 14, 2020 is **VACATED**. The Clerk is **DIRECTED** to transfer the case to the Central District of California, and to close the case.

**IT IS SO ORDERED.**

Dated: 7/6/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge